UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSEPH ROMAIN, et al.,

                    Plaintiffs,

                v.

CITIBANK, N.A.,

                    Defendant.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
24-CV-2933-SJB-ST

**BULSARA, United States District Judge:**

      Plaintiffs Joseph and Marie Romain ("the Romains"), proceeding pro se, have filed this action alleging that Citibank, N.A. ("Citibank") violated various federal laws, including the Fair Credit Reporting Act. The Romains allege Citibank engaged in improper billing on Marie Romain's Sears credit card account and improper reporting of amounts owed, which adversely affected the Romains' credit score and ability to get a loan. (Pls.' Opp'n to Arb. dated Feb. 27, 2025 ("Pls.' Opp'n"), Dkt. No. 34 at 2–3). Citibank has moved to compel arbitration of these claims, (Def.'s Mot. to Compel Arb. dated Feb. 26, 2025 ("Def.'s Mot. to Compel"), Dkt. No. 33), which the Romains oppose, (Pls.' Opp'n at 1). Because Citibank has offered no evidence that the Romains had any form of notice and opportunity to assent to the arbitration agreement, the motion is denied.

DISCUSSION

      In a contractual dispute implicating interstate commerce, an arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or

in equity for the revocation of any contract." 9 U.S.C. § 2; *All. Bernstein Inv. Rsch. & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006) ("[T]he Federal Arbitration Act (the 'FAA') creates a 'body of federal substantive law of arbitrability' applicable to arbitration agreements . . . affecting interstate commerce." (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983))); *see also Viking River Cruises, Inc. v. Moriana*, 559 U.S. 639, 650 (2022) (Section 2 "renders agreements to arbitrate enforceable as a matter of federal law"). This is "because the FAA puts arbitration clauses 'on an equal footing with other contracts.'" *Certain Underwriters at Lloyds, London v. 3131 Veterans Blvd. LLC*, 136 F.4th 404, 409 (2d Cir. 2025) (quoting *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024)); *see also Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (Section 2 reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution").

"In deciding whether a dispute is arbitrable, [the Court] must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (quotations and citation omitted). The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000).

As to the first issue, "[t]o determine whether parties agreed to arbitrate," the court must "consider all relevant, admissible evidence submitted by the parties," drawing "all reasonable inferences of the non-moving party"—a standard akin to

summary judgment. *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 115 (2d Cir. 2025) (quotations and citation omitted). It is the party seeking to arbitrate that bears the burden on this threshold issue. *Id.*

Citibank issued Marie Romain a Sears MasterCard credit card on March 16, 2002. (Decl. of Andrew Grayot dated Feb. 19, 2025 ("Grayot Decl."), Dkt. No. 33-2 ¶ 6). On December 9, 2015, Citibank issued new card agreements (the "Agreement") for its Sears MasterCard. (*Id.*). This 2015 Agreement contains the arbitration provision that Citibank wishes to enforce. (*Id.* ¶ 8; Def.'s Mot. to Compel at 3). But it provides no evidence that Citibank sent Marie Romain this Agreement. The Grayot Declaration elides over this essential fact by focusing not on whether Citibank mailed the Agreement, but on whether its mailing was returned: "I have reviewed Citibank's records . . . and there is no record that the postal service returned [the 2015 Agreement] as undeliverable." (Grayot Decl. ¶ 7). This statement assumes that the 2015 Agreement was mailed in the first place (and thus could possibly even be returned). The Declaration contains no assertion or evidence that Citibank ever mailed the Agreement, that in 2015 it was the regular practice of Citibank to mail the new Agreement to existing cardholders, or that any business record of Citibank's establishes that the Agreement was sent.[1]

Unfortunately, in a less than forthright presentation and what reads like a deliberate mischaracterization, Citibank's motion states that "[o]n or about December 2015, Citibank provided a new Card Agreement to Ms. Romain." (Def.'s Mot. to

---

[1] The declaration does detail other regular business practices, including Citibank's practices of noting that mail was returned or that a cardholder rejected the arbitration provision. (Grayot Decl. ¶¶ 7, 10).

3

Compel at 3 (citing Grayot Decl. ¶ 6)).  But as noted, the cited paragraph of the Grayot Declaration states *only* that Citibank issued a new Agreement in 2015.  (Grayot Decl. ¶ 6).  It does not say that Citibank provided that Agreement to Ms. Romain.  This kind of mischaracterization is a surefire way to lose credibility, if not provoke sanctions from a court.

Apparently aware of this evidentiary gap, but leaving it unstated, Citibank does not even attempt to argue that a party that receives an arbitration agreement in a mailing has inquiry or constructive notice of its terms and is thus still bound by them, even if actual notice or knowledge is absent.  Instead, it resorts to the fallback argument that under South Dakota law use of the credit card binds the user to the terms of a card agreement, including arbitration.  (Def.'s Mot. to Compel at 8).  Citibank has tried this canard at least once before.  *See Katsnelson v. Citibank Nat'l Ass'n*, 691 F. Supp. 3d 667, 671 (E.D.N.Y. 2023) ("Citibank's misleading declaration elides the crucial fact: what in its records establishes that Katsnelson was mailed the Agreement[.]").  It has no merit.

Citibank overemphasizes assent at the expense of first establishing the Romains had any form of notice, whether actual or inquiry.  It may be that in South Dakota, a party is bound by contract terms it received (but did not read) by its conduct, like using the credit card.  *Cf. Sukadow v. CleanChoice Energy, Inc.*, No. 24-1988, 2025 WL 2457656 at *3 (2d Cir. 2025) ("Under New York law, when an offeree does not have *actual* notice of certain contract terms, he is nevertheless bound by such terms if he is on *inquiry* notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." (quoting *Davitashvili*, 131 F.4th at 115–16)); *Schnabel v.*

4

*Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012) ("[I]n cases such as this, where the purported assent is largely passive, the contract-formation question will often turn on whether a reasonably prudent offeree would be on notice of the term at issue.  In other words, where there is no actual notice of the term, an offeree is still bound by the provision if he or she is on *inquiry* notice of the term and assents to it through the conduct that a reasonable person would understand to constitute assent.").  But if conduct is going to constitute assent, there must be some indication that the cardholder knew or should have known that card usage would bind them to terms of the proposed agreement.  "In South Dakota, there must be a meeting of the minds or mutual assent on all essential terms for those terms to be included in the agreement."  *Dakota Foundry, Inc. v. Tromley Indus. Holdings, Inc.*, 737 F.3d 492, 495 (8th Cir. 2013).

On this record, there was no notice of the arbitration terms.  And therefore, there can be no assent, since one party never received the contract at issue.  Here, Citibank provides no evidence that the Romains received the Agreement in the first place, or that they should have reasonably been aware of its terms, even if the Agreement does say it would bind them upon use of the credit card.  "Citibank cites no authority for the proposition that use of a card binds a party to contract terms he has not received.  Indeed, federal cases applying South Dakota law appear to uniformly suggest that use binds a party to *received* terms, not unknown ones."  *Katsnelson*, 691 F. Supp. 3d at 673 (collecting cases interpreting South Dakota law); *e.g., Dakota Foundry*, 737 F.3d at 496 ("[H]ere, it cannot be said Dakota was on notice of a document it did not already have in its possession.  Because the arbitration provision was not readily available and

5

because Dakota did not have a reasonable opportunity to reject it, Tromley cannot establish the necessary consent to bind Dakota to that provision."); *cf. Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 53 (2d Cir. 2022) ("Brinker [argues] . . . that under New York law, a party can manifest assent to a contract, including an arbitration agreement, by continuing to work after being made aware of the agreement, even if she never actually signs it.  The problem for Brinker, though, is that such course-of-conduct cases require, at a minimum, that an employee have received the agreement (or otherwise had the chance to learn of the agreement's existence)." (citations omitted)).  And that is the same conclusion that the South Dakota Supreme Court has reached.  *Masteller v. Champion Home Builders, Co.*, 723 N.W.2d 561, 565 (S.D. 2006) (declining to enforce arbitration agreement plaintiffs did not receive at the time of contract formation and rejecting argument that subsequent conduct was sufficient to bind parties to arbitration).

      The cases Citibank cites in its motion prove this point: notice must be established before card use binds the cardholder to the arbitration clause in the Agreement.  (*See* Def.'s Mot. to Compel at 8 (citing *McCormick v. Citibank, NA*, No. 15-CV-0046, 2016 WL 107911, at *1 (W.D.N.Y. Jan. 8, 2016) ("[Plaintiff] acknowledges that, upon receipt of the Best Buy credit card, he received a copy of the cardholder agreement governing the account[.]"); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1199 (S.D. Cal. 2013) ("As discussed below, under South Dakota law, an agreement to arbitrate exists between Baker and Defendants if Baker continued to use her credit account after she received the 'bill stuffer' notices."); *Fedotov v. Peter T. Roach & Assocs., P.C.*, No. 03-CV-8823, 2006 WL 692002, at *1 (S.D.N.Y. Mar. 16, 2006) ("Plaintiff received the first of the

Card Agreements when he received his credit card, which he thereafter used; the second of the Card Agreements was sent subsequently, following which Plaintiff continued using the credit card.")).[2]

The motion to compel is denied.  *E.g.*, *Haynes v. TransUnion, LLC*, No. 19-CV-7157, 2021 WL 7906567, at *6 (E.D.N.Y. Sep. 30, 2021) (denying motion to compel, applying South Dakota law, because of insufficient evidence that plaintiff used the account *after receiving* the agreement mandating arbitration), *adhered to on reconsideration*, 2022 WL 1228927 (Apr. 25, 2022).

Magistrate Judge Tiscione is respectfully requested to hold a status conference to establish a schedule to govern discovery and other pretrial matters in this case.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:   September 29, 2025
        Central Islip, New York

---

[2] Indeed, that is why courts often have to analyze South Dakota's "presumption of receipt" when an issuer, like Citibank, states that its practice was to mail agreements and has direct evidence of a mailing to the plaintiff or of a regular business practice. *E.g.*, *Clookey v. Citibank, N.A.*, No. 14-CV-1318, 2015 WL 8484514, at *3 (N.D.N.Y. Dec. 9, 2015) ("New York and South Dakota recognize a presumption of receipt when a mailing is properly sent through regular office procedures.  Citibank is entitled to this presumption because it submitted an affidavit of Cathleen Walters, a Senior Vice President for a Citibank subsidiary, attesting that the Card Agreement was mailed to Clookey with the welcome letter on October 8, 2013.  Walters also attached a copy of the mailing to her affidavit containing Clookey's address." (internal citations omitted)).

7